IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF OHIO
WESTERN DIVISION

Pearl Patterson,                              Case No. 3:13CV1290

      Plaintiff

      v.                                         **ORDER**

Mercy St. Charles Hospital,

      Defendant

      This is an age discrimination case. Plaintiff, Pearl Patterson, is a terminated former employee of the defendant, Mercy St. Charles Hospital in Oregon, Ohio.

      Pending is the defendant's motion for summary judgment. (Doc. 29). For the reasons that follow, I overrule the motion.

## Background

      Born in 1950, plaintiff worked for the defendant from 1970 until October, 2012, when Rebecca Snow, an HR officer at the hospital told her she could no longer do the job she had done since 1978. Though Snow offered plaintiff lesser paying jobs in the hospital's Housekeeping and Dietary Departments, plaintiff did not accept that offer and quit.

      Until then, plaintiff had worked in the Central Services Department (also known as Central Supply or Material Services). She worked in the "pack room," decontaminating and repackaging instruments for reuse.

Until sometime, and apparently not too long, before Kim Gray became the department's manager in late 2011, plaintiff appears to have enjoyed cordial relations with her coworkers. Before Gray became her supervisor, plaintiff had not had disciplinary problems during her tenure with the hospital.

At its core, the gravamen of plaintiff's complaint is that two younger workers, Angel Jablonski (d.o.b. 1980) and Joni Kendall (in her late 30s or early 40s),[1] made ageist comments and otherwise interfered with plaintiff's work, and, importantly, that Gray sided with and favored Jablonski and Kendall, though herself not engaging in that sort of behavior.

As a result of Jablonski's and Kendall's actions, which plaintiff perceived as age-based harassment, personal relations between plaintiff and Jablonski and Kendall deteriorated. Gray's initial response, as discussed in more detail below, was to fault plaintiff. Later Gray issued substantially equivalent formal disciplinary warnings to plaintiff, Jablonski, and Kendall.

Gray's first performance evaluation report of the plaintiff, dated November 15, 2011, was, in any event, almost entirely positive and laudatory. (Doc. 32 (Gray Dep.), Attachment 2). Among Gray's descriptors for plaintiff were "[v]ast amount of knowledge and experience," "works extremely well with surgical staff," "fosters good communications between Central Services and Surgery," and "shows initiative." (Gray Dep., Attachment 4).

Gray noted, however, under "Areas for Growth or Improvement," "Continue to develop interpersonal skills with department coworkers." In addition, under "Job Description/Additional

---

[1] Plaintiffs' other coworkers and their birth years were: Rebecca Burgess (1974), Kathy Orange (1957), Martrese Rushing, and Ester Ziemianski (1962). Gray, the new manager, was born in 1961. The record does not disclose Kendall's or Rushing's date of birth.

Requirements," Gray checked boxes marked, "Annual Education Update," "Competencies Met," and "Adherence to Standards."[2]

Gray's concluding "Evaluation Comments" were: "Pearl is an asset to the sterile processing function of Central Service. Her relationship with Surgery is invaluable and her experience and knowledge of all facets pertaining to instrument trays is appreciated." (Gray Dep., Exh. 4).

Gray expressed more specific concerns about plaintiff's relationships with coworkers in an April, 2012, "Employee Discussion Summary." Fairly viewed as a warning, the Discussion Summary stated:

> Over the last couple of months you have been observed treating your coworkers poorly by using an inappropriate tone of voice and by not listening to required information that pertains to work-related issues. It has been noted that you often choose to leave the department Huddle before necessary discussion and communication are finished. Coworkers have voiced concerns to me that they are not comfortable dealing with you directly as you do not seem willing to assist them. Your negative attitude is creating a noticeable and "unbearable" tension within the department.

(Doc. 32 (Gray Dep.), Attachment 3).

Under "Expectations," Gray wrote:

> In accordance with our Standards of Behavior you are expected to treat coworkers in a courteous manner – rudeness is not acceptable. You are also expected to be attentive when coworkers are providing you with reports in regards to work that needs to be done. It is necessary that you communicate with your coworkers in departmental matters.

---

[2] The present record does not indicate whether Jablonski and Kendall – the persons who, presumably, were the "coworkers" referenced in plaintiff's Performance Evaluation – received similar comments in their evaluations.

3

(*Id.*).³

The "Discussion Summary" concluded, under "Job Expectations," "Future complaints will result in disciplinary action." (*Id.*).

The only formal discipline against plaintiff, which also came from Gray, occurred in June, 2012. That was a formal warning that she had failed to comply with the defendant's Code of Behavior regarding her inter-personal relationships with coworkers. The narrative portion of the warning stated, "It was reported that on more than one occasion and witnessed by more than one coworker, you responded in an angry manner to your coworkers by raising your voice and slamming equipment/items on the benches." (Exh. 32 (Gray Dep.), Attachment 4).

In her deposition, plaintiff disputed the accuracy of Gray's reports about her conduct. She testified that Kendall and Jablonski "treated her poorly," while she herself "treated Kendall and Jablonski in a manner she would want to be treated, i.e., the Golden Rule." (Exh. 33 (Patterson Dep.), at 170). She testified further that Kendall and Jablonski, "wanted to do things their way . . ." and "The way that I do things in the department, I've done it for so many years, and I've never been written up about my work." (*Id.*, at 181). Gray, in plaintiff's view, "listened to Kendall and Jablonski but never to" her. (*Id.*).

That plaintiff considered herself ill-treated by Jablonski and Kendall – and, indeed, by Gray, but by none of her other coworkers – is manifest in a lengthy letter she sent to Gray on April 20, 2012. The letter expressly stated that plaintiff was subjected to workplace harassment and noted that Gray's response had been to tell her that, "If you are not happy in your department, go work

---

³ The present record contains no indication that Jablonski and Kendall, plaintiff's primary antagonists, were also the subject of a similar informal warning from Gray.

somewhere else." Her letter indicated that she had, in fact, elected to work third shift instead of first (as was preferable). Plaintiff stated expressly that she considered herself the victim of age discrimination. (*Id.*, Attachment 7).[4]

There is much in the record that could enable a jury to find that plaintiff's testimony and statements in her letter fairly depicted her working conditions after Gray took over the department.

Indeed, when Gray issued her June 20, 2012 warning to plaintiff, she also issued a similar warning to Jablonski and Kendall about ill-treatment of coworkers (*i.e.*, of the plaintiff).

The narrative portion of Jablonski's warning stated, "It was reported that you criticized and belittled other employees in front of staff on more than one occasion," and "It was reported you were critical of others (*sic*) work efforts and performance which created a breakdown in the team." (*Id.*, Attachment 5).

The narrative portion of Kendall's warning repeated, *verbatim*, the narrative in Jablonski's warning. In addition, the warning to Kendall stated, "It is reported you changed/adjusted processes in your work flow in your area without regard to the impact on others." (*Id.*, Attachment 6).[5]

Each of the June 20th reports stated that further noncompliance with requirements would result in progressive disciplinary action, including up to and including termination.

---

[4] Plaintiff sent copies of her letter to the defendant's President and Vice-President. Gray showed the letter to HR associate Rebecca Snow (who already had a copy) and HR Director Gary George. The record does not indicate whether Snow or George followed up with plaintiff, or undertook any inquiry into her contentions of age-based animus and harassment.

[5] This rather opaque statement appears to confirm that portion of Orange's affidavit, discussed below, in which she stated that Jablonski and Kendall would rearrange plaintiff's work area, making it necessary for plaintiff to put things back in order to do her work.

Several of Patterson's coworkers have submitted affidavits that support Patterson's view of her working conditions while Gray was her supervisor.

According to Ziemianski's affidavit, Gray favored younger employees Jablonski and Burgess in a variety of ways, plaintiff was "old school," and Gray failed to act on proposals plaintiff offered during "Huddles." (Ziemianski Affidavit, ¶¶ 12, 13).

Coworker Orange's affidavit stated, *inter alia*, that Kendall and Jablonski disliked the plaintiff, laughed at, made fun of, argued with, and harassed her, and often rearranged her work area over her objections. Gray, who herself lacked experience with the department, "allowed the younger employees," namely Burgess, Jablonski, and Kendall, "to tun the department." As a "peer interviewer" for the defendant, Gray routinely selected younger over older interviewees. (Orange Affidavit, ¶¶ 9, 11).

Coworker Rushing stated that Jablonski "on numerous occasions [made] comments at work about Pearl Patterson's age, including that Pearl needs to retire and that Pearl should have retired." (Rushing Affidavit, ¶ 9). In her view, plaintiff "was forced to leave the department, . . ., due to her age." (*Id.,* ¶ 11).[6]

During Gray's tenure the hospital adopted a requirement that all employees in Central Services had to become state certified, though state law did not require certification for this kind of work. Others passed the test; plaintiff failed it twice. Though Gray had told plaintiff she would have help preparing for the test, defendant gave her neither that assistance nor the opportunity to take it for a third time.

---

[6] I reserve ruling on the admissibility of this opinion evidence, on which I do not rely here, but simply note as part of the record before me.

In October, 2012, Snow notified plaintiff she could no longer work in Central Services due to her lack of certification. Snow offered other, lower paying positions elsewhere in the hospital's Housekeeping and Dietary Departments. Plaintiff declined those offers due to the reduction in pay that came with them. She then quit.[7]

Defendant has offered a couple of explanations for its decision to bar plaintiff from continuing to work in Central Services: whereas Snow and defendant's motion point to lack of certification, in the defendant's interrogatory responses it asserted plaintiff lost her job due to a reduction in force (RIF). Defendant reserved the right to provide other explanations following discovery.

A rational jury could find both of these explanations pretextual – and not just because of their basic inconsistency. *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 540 (6th Cir. 2014) ("Shifting justifications over time calls the credibility of those justifications into question. By showing that the defendants' justifications for firing him changed over time, [the plaintiff] shows a genuine issue of fact that the defendants' proffered reason was not only false, but that the falsity was a pretext for discrimination.").

As plaintiff points out, the reduction in force contention appears somewhat dubious in light of the defendant's failure to follow its own policies. When a reduction is force is necessary,

---

[7] For purposes of this opinion, I view plaintiff's decision not to accept alternative employment as relevant to mitigation of damages, rather than precluding her age discrimination claim. The gravamen of her age discrimination complaint is that the defendant terminated her from Central Services, not that the hospital terminated her entirely.
  I note that the offer of placement elsewhere seems, on its face at least, inconsistent with the defendant's assertion in its interrogatory answers that plaintiff lost her position due to a reduction in force. It will, in event, be incumbent on the defendant to show that such positions in fact were open and available, regardless of bidding processes and/or seniority rights, etc., if any.

according to the applicable policy, "[M]anagement within those affected areas will develop a plan for the Reduction-in-Force. The reasons for the change must be documented, as well as other alternatives that were considered." (Gray Dep., Attachment 8).

The defendant, which has not filed a reply brief to support its summary-judgment motion, has provided no evidence that Gray, Snow, or anyone else prepared the requisite plan.

Moreover, the plaintiff has presented proof that no reduction in force occurred. After plaintiff lost her job, the hospital posted the job. The posting came down when Ziemianski applied for the job, which, according to Ziemianski's affidavit, the hospital gave to Jablonski. (Ziemianski Affidavit, ¶¶ 2, 3, 14).[8]

Defendant contends that, in fact, it did not replace plaintiff with a full-time employee. Instead, it states, Burgess, a part-time employee, took over plaintiff's job duties.

A jury could find that defendant's contention the Burgess was only part time was not true: According to plaintiff, both her time cards and her own testimony indicate that Burgess usually worked forty hours per week.

A rational jury could also find that plaintiff's lack of certification was also pretextual. Burgess, fourteen years younger than plaintiff, remained uncertified until 2014, when she passed the test on her third try. Ziemianski's affidavit indicates that Gray took a more tolerant attitude toward Burgess's delay in becoming certified. (Ziemianski Affidavit, ¶ 9). According to Orange, Gray stated, "we'll let it [certification] slide . . . Yeah, she'll get it one of these days." (Orange Affidavit,

---

[8] Ziemianski's statement about who took over plaintiff's job is at odds with plaintiff's contention that Burgess replaced her.

¶ 7). When Gray made that statement, she also, according to Orange, "laughed and rolled her eyes," which Orange understood as conveying that "she did not care if [Burgess] ever got certified." (*Id*.).

Finally: it is not entirely clear that defendant also seriously advances job performance as a basis for its decision. The only possible support for any such claim would be that plaintiff did not comply with the formal warning's demand that she get along with her coworkers. But plaintiff, no doubt, would, in support of her claim of pretext, try to show that Jablonski and Kendall were every bit at fault in that regard as she – but they were allowed to stay on in the Department.

### Discussion

I need not tarry overlong in my application of basic legal doctrine.

The only dispute as to the *McDonnell-Douglas* factors is whether plaintiff was qualified to do her job.

I find no merit in defendant's contention that plaintiff was fired because she was not, due to lack of certification, qualified, and thus cannot make out her *prima facie* case. Defendant does not claim that what plaintiff's daily tasks and chores would have changed, had she become certified. The simple fact is, as Gray's initial performance review makes clear, that plaintiff performed, and had continually for several decades done, her job in an exemplary manner.

In arguing that failure to become certified made plaintiff unqualified – *i.e.*, not doing her assigned tasks "at a level" that met the hospital's "legitimate expectations," *Thomas v. AT&T Servs., Inc.*, 933 F. Supp. 2d 954, 965 (N.D. Ohio 2013) – the defendant conflates the elements of a *prima facie* case and plaintiff's burden to prove pretext.

With or without certification, plaintiff was able to do everything the hospital want her to do from day.

9

"A court must evaluate whether a plaintiff established [her] qualifications," the Sixth Circuit stated in *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 585 (6th Cir. 2002) (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000), "independent of the employer's proffered nondiscriminatory reasons for discharge." *See also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc).

This rule makes good sense: few enough cases clear the *prima facie* hurdle; none would do so if employers could prevail on the qualification element by advancing at that premature stage the reasons for its adverse employment decision, especially when, as is the case here, a reasonable jury could find those reasons to be pretextual.

Next, the record contains sufficient evidence to enable a rational trier of fact to find by a preponderance of the evidence that all the proffered reasons for barring plaintiff from Central Services were pretextual.

A jury could find that, though Snow told plaintiff she could no longer do her job for want of certification, the company – through Gray – allowed an uncertified younger employee (Burgess) to take over plaintiff's duties and gave her upwards of two years, and a third chance, to pass the certification exam.

A rational jury could also find that the reduction in force rationale was pretextual.

This is so for several reasons, including: 1) the RIF rationale came long after Snow told plaintiff she was depriving her of her job due to lack of certification; 2) there is no evidence the hospital was, in fact, undergoing a RIF; 3) if there was a RIF, the hospital ignored its own policies and processes for conducting it; and 4) contrary to the company's contention about a part-time replacement, the young employee who took over plaintiff's job was *de facto* a full-time employee.

Other aspects of the record, as it presently stands, could help persuade the jury that plaintiff's age, rather than anything else, underlay her loss of her job to a younger person.

Coworkers attribute ageist animus to Jablonski and Kendall. The jury could accordingly find that they were the but-for cause of their interpersonal conflicts with the plaintiff who, before Gray's arrival, had no disciplinary write-ups. It could also find that Gray, when she wrote up the Summary of Discussion, either knew of and ignored, or should have known but did not know of, what Jablonski and Kendall were up to.

Moreover, though Gray later treated all three substantially equally, the second time around, there is no evidence in the record of any thoroughgoing inquiry into the root causes of the conflict between plaintiff and Kendall and Jablonski.

Finally, there is no evidence presently in the record that, following plaintiff's express complaint about age discrimination and age-based mistreatment by coworkers, Gray, Snow, or anyone else undercook to find out whether her complaints had merit.

A jury, of course, could take a different view of the evidence once it is presented at trial.

For now, that remains to be seen.

**Conclusion**

Plaintiff has met her four part *prima facie* burden under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973): she's a member of the protected class, she was qualified to do her job, she suffered an adverse employment action, and a younger person replaced her. A jury could find on the present record that the reasons the hospital offers for its actions were a pretext to conceal the fact that plaintiff's age played a role in the loss of her job.

It is, accordingly,

ORDERED THAT:

1. Defendant's motion for summary judgment (Doc. 29) be, and the same hereby is denied;

2. The parties shall appear before the undersigned on Thursday, October 20, 2016, at 2:00 p.m. for a settlement conference; plaintiff and a representative of the defendant with *full* settlement authority shall attend;

3. Not later than two weeks before the conference, plaintiff shall have made a reasonable, good faith demand; not later than one week before the conference defendant shall have made a reasonable, good faith counteroffer; and

4. Ex parte narrative settlement statements shall be filed on or before Monday, October 17, 2016.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge